UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTONIO VARGAS CERVANTES
(A# 205-380-366),

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

No.  1:26-cv-04467-DC-SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.  For the reasons explained below, the undersigned recommends granting the § 2241 petition and ordering Petitioner immediately released from immigration custody and restored to his deferred action status.

I.    **Factual and Procedural History**

Petitioner is a native and citizen of Mexico who has lived in the United States since 2012 after entering without inspection by immigration officials.  ECF No. 1 at 4.  Since that time, he created his own business while working multiple construction jobs and established a family that includes a U.S. citizen child and two step-children.  ECF No. 1 at 6.

1

On January 16, 2018, Petitioner filed a petition for U Nonimmigrant Visa Status—i.e., a "U-visa"—with United States Citizenship and Immigration Services ("USCIS") because he had been the victim of a felony assault.  ECF No. 1 at 2.  As part of this application process, Petitioner disclosed his criminal history to USCIS by providing documents related to his arrests and three DUI convictions.  ECF No. 1 at 6.  "Other charges against him from other arrests have been dismissed, including a federal case against him dismissed in January 2023."  Id.

On October 4, 2024, USCIS determined that Petitioner met the criteria for a U-visa, but the fiscal year's limit for this visa category had already been reached.  ECF No. 1-2 at 1; see also 8 C.F.R. § 214.14(d)(2).  As a result, USCIS placed Petitioner on a waiting list for a U-visa and granted him deferred action "as permitted by regulation."  ECF No. 1-2 at 1.  As a result of being placed into deferred action, Petitioner was also eligible to apply for an employment authorization document ("EAD").  Id.  USCIS issued him an EAD on October 20, 2024, which is valid until October 20, 2028.  Id.

On May 5, 2026, in an operation specifically targeting him, Immigration and Customs Enforcement ("ICE") arrested Petitioner after he left his home.  See also ECF No. 6-1 at 2 (I-213 Form).

Petitioner raises four separate claims for relief in his § 2241 petition.  First, he asserts that his detention is unlawful because it violates the preliminary injunction issued in the class action lawsuit of Immigrant Center for Women & Children v. Noem, et al., No. 2:25-cv-09848-AB-AS, 2026 WL 1455004 (C.D. Cal. May 20, 2026), appeal docketed, No. 26-3961 (9th Cir. June 22, 2026) ("ICWC").  ECF No. 1 at 17-18.  Next, Petitioner contends that he is entitled to notice and an opportunity to be heard under the Fifth Amendment's procedural due process clause before his deferred action status can lawfully be revoked.  ECF No. 1 at 18-20.  In claim three, Petitioner alleges that his detention violates the Fifth Amendment's substantive due process clause.  Id. at 20-22.  Finally, petitioner contends that his detention violates the Accardi Doctrine because it is contrary to the agency's longstanding policy and practice.  Id. at 22-23.

Respondents filed an untimely answer to the petition, contending that Petitioner is an

2

"applicant for admission" who is properly detained pursuant to 8 U.S.C. § 1225(b).[1]  ECF No. 6. Respondents do not address any of the substantive claims based upon Petitioner's deferred action status at the time of his arrest by ICE.

Without explanation as to their legal significance, Respondents attached numerous immigration documents to their answer.  ECF Nos. 6-1; 6-2; 6-3.  These documents demonstrate that Petitioner was issued a Notice to Appear ("NTA") for removal proceedings two days after his arrest by ICE.  The NTA charges him with being removable pursuant to Immigration and Nationality Act § 212(a)(6)(A)(i) for being present without being admitted or paroled into the United States.  ECF No. 6-1 at 9-11.  Additionally, USCIS issued a letter dated June 22, 2026— but filed in this habeas action on June 19, 2026—and captioned as a "Request for Evidence" ("RFE").  The RFE does not merely seek evidence from Petitioner.  It revokes Petitioner's deferred action status and employment authorization and removes Petitioner's U-visa application from the nonimmigrant visa waiting list.[2]  ECF No. 6-3 at 2.  USCIS took this action based on Petitioner's arrests dating from December 2014 to January 23, 2023.  Id. at 2-3.  In the letter, USCIS acknowledged that it had received documents concerning these arrests from Petitioner in September 2024.  Id. at 3.[3]

In his reply, Petitioner points out that the exhibits attached to the answer demonstrate that ICE was aware of the U visa application before they arrested Petitioner.  ECF No. 7 at 3.[4] Petitioner also notes that the criminal records requested by USCIS in June 2026 were already "in its possession at the time of its grant of deferred action in October 2024."  ECF No. 7 at 3. According to Petitioner, this "timing… suggests [the RFE letter] was generated as a result of the

[1]  Any future untimely filing that is not preceded by a motion for administrative relief pursuant to Local Rule 233 may be stricken from the docket as in violation of a Court order.
[2]  The letter indicates that it is in reference to Petitioner's I-192 Application for Advance Permission to Enter as a Nonimmigrant.  ECF No. 6-3 at 1.
[3]  Respondents also filed an immigration judge ("IJ") order dated June 17, 2026 finding a lack of jurisdiction over Petitioner's request for a custody redetermination.  ECF No. 6-2 at 1.
[4] It is not clear exactly what Petitioner references here, though Petitioner's I-213 does indicate that ICE agents ran a "check" with "CIS," which returned a "positive" result.  ECF No. 6-1 at 2. The I-213 also notes that Petitioner filed a pending U-visa application in 2018 and "claims to have pending applications" before USCIS.  Id. at 4.

Petition for Writ of Habeas Corpus, an *ex post facto* action to undercut Petitioner's argument and reverse engineer justification for his detention and removal, as Petitioner's circumstances have not changed since October 2024[.]" Id. (emphasis in original).  Based on the recent revocation of Petitioner's deferred action status, Petitioner requests that the Court order Petitioner's deferred action status restored "absent changed circumstances and procedural safeguards allowing for a response prior to termination of this conferred benefit." Id. at 5.

### II.   Legal Standards

#### A.  Due Process

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).  This provision "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).  Freedom from imprisonment or physical restraint is a "fundamental" right at the "core of the liberty protected by the Due Process Clause." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause.  The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").  In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies.  See Rodriguez Diaz, 53 F.4th at 1206-07.  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved

4

including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

### B. Accardi Doctrine

In United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954), the Supreme Court stated that "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."  Accardi, 347 U.S. at 268.  This so-called Accardi Doctrine has been applied in various contexts, including to immigration procedures.  Accardi itself was an immigration case, and the doctrine has been applied in immigration cases since then.  See Nicholas v. Immigr. & Naturalization Serv., 590 F.2d 802, 806–08 (9th Cir. 1979) (addressing an INS operations instruction); Romeiro de Silva v. Smith, 773 F.2d 1021, 1025 (9th Cir. 1985) (noting that the INS can be bound by its "Operations Instructions"); Montilla v. I.N.S., 926 F.2d 162, 166 (2d Cir. 1991) (INS hearing officer did not comply with hearing regulation).  The doctrine requires an agency to adhere not just to formal regulations, but also "its own internal operating procedures," "internal procedures," "handbook[s]," "policy statements," and other evidence of the agency's "usual practice."  Alcaraz v. I.N.S., 384 F.3d 1150, 1162 (9th Cir. 2004).

### III.    Analysis

### A. Petitioner's Status as a Class Member in the ICWC Litigation

Given the prominence of the ICWC lawsuit in litigation concerning ICE's treatment of beneficiaries of victim-based benefits applications, the undersigned begins by briefly examining that case and explaining why it neither expands nor limits Petitioner's rights before this Court.  In ICWC, a group of noncitizens with pending victim-based immigration applications, including U-visa petitions, brought a class action lawsuit in the Central District of California against the Secretary of the Department of Homeland Security ("DHS") and two of its component agencies, ICE and USCIS.  The ICWC plaintiffs challenge a January 30, 2025 policy announced by ICE which departed from long-standing agency practice and indicated that it would detain and remove noncitizens, regardless of their pending victim-based applications and immigration benefits—

including deferred action—that had been granted by USCIS.[5]  2026 WL 1455004, at *3 (citing ICE Policy No. 11005.4, *Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits* (Jan. 30, 2025)).  On May 20, 2025, the district court provisionally certified three classes and granted limited class-wide preliminary injunctive relief under the Administrative Procedures Act ("APA").[6]  Specifically, the district court issued a nationwide stay of ICE's new policy of "not honor[ing] grants of deferred action conferred by USCIS to individuals with pending petitions for U or T visas" pursuant to § 705 of the Administrative Procedures Act.  Id. at * 46.  The district court also granted a preliminary injunction to certain individual plaintiffs—but not to any of the provisionally certified classes—under the Accardi Doctrine and the Due Process Clause.  Id. at 39-41 & 39 n.21.

In claim one, Petitioner seeks release from detention under ICWC.  As Petitioner reasons, because he is an ICWC class member, the preliminary injunction in that case prohibited his arrest and therefore violated the APA.  However, his arrest occurred on May 5, 2026 and the preliminary injunction in ICWC was not issued until May 20, 2026.  Additionally, Petitioner does not explain how a civil litigant can proceed under the APA to enforce a right bestowed to him as a class member in a civil action pending in another district court.  For these reasons, the undersigned recommends denying Petitioner's claim arising directly under ICWC.

Even though not entitled to relief on this claim, Petitioner may have certain rights as an ICWC class member which class counsel could seek to enforce on his behalf in that separate

---

[5]  The plaintiffs also include nonprofit legal service providers that advocate for noncitizens.

[6]  Petitioner would appear to be a member of two of the three classes:

> Pending Petition Class: All individuals with pending principal or derivative U visa petitions, T visa petitions, or VAWA self-petitions who ICE detains or seeks to detain for civil immigration enforcement.

> Deferred Action Class: All individuals to whom USCIS has granted deferred action based on a pending U or T visa petition and who, during the authorized period of deferred action, ICE detains, seeks to detain, or removed without providing notice and an opportunity to be heard regarding potential revocation of their deferred action status.

2026 WL 1455004, at *18.

action.  As noted above, the ICWC court ordered a class-wide APA stay of the implementation of the government's unlawful policies.  See 2026 WL 1455004 at *45-46.  Here, Respondents appear to have acted under the policies challenged in ICWC to detain Petitioner and to revoke his deferred action.  Respondents thus appear to have violated Petitioner's rights under the class-wide preliminary injunction entered in ICWC—at least to the extent that they continued to detain him after May 20, 2026 and summarily revoked his deferred action status—and may be held to account for that in the Central District.  In the meantime, Petitioner is before this Court asserting ongoing injuries of unlawful detention in violation of his deferred action status.  The Court now turns to whether Petitioner is entitled to relief under procedural due process (Claim 2) and the Accardi Doctrine (Claim 4).

### B.  Petitioner is Entitled to Relief Under the Due Process Clause

#### 1.  Protected Liberty and Property Interests

This Court must first determine whether Petitioner has a protected interest in the benefits conferred to him by virtue of his deferred action status such that Respondents could not deprive him of those benefits without due process.  To maintain a liberty or property interest in a government benefit, such as deferred action and employment authorization, "a person clearly must have more than an abstract need or desire for [the benefit]"  Gerhart v. Lake County, Mont., 637 F.3d 1013, 1019 (9th Cir. 2011) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)).  The person "must have more than a unilateral expectation of it," and must "instead have a legitimate claim of *entitlement* to it."  Id. (emphasis in original).  This liberty or property interest must "stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Id.

In this case, the undersigned finds that Petitioner had both a liberty and property interest in his deferred action status.  Petitioner had a legitimate claim of entitlement to deferred action status as a result of USCIS's determination on October 4, 2024 that he was eligible for a U visa, but the annual statutory cap had already been issued.  See 8 C.F.R. § 214.14(b) (listing the eligibility requirements for U-1 nonimmigrant status), (d) (describing the annual cap and the

waiting list for "[a]ll eligible petitioners who, due solely to the cap, are not granted U-1 nonimmigrant status."). Therefore, he was granted deferred action and placed on a waiting list for a U nonimmigrant visa pursuant to 8 C.F.R. § 214.14(d)(2). "Approval of deferred action status means that ... no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated." Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 484 (1999). Knowing that his deferred action status meant that he would not be removed from the United States or detained for the purposes of removal, vested Petitioner with a liberty interest. In addition, based on the approval of employment authorization that came with his deferred action status, Petitioner also had a vested property interest.

This conclusion is supported by other district court decisions to have found that noncitizens granted deferred action status have a vested liberty or property interest that is protected by due process. Sepulveda Ayala v. Bondi, 794 F. Supp. 3d 901, 914 (W.D. Wash. July 24, 2025); B.D.A.A. v. Bostock, No. 6:25-cv-02062-AA, 2025 WL 3484912, at *6 (D. Ore. Dec. 4, 2025); Fugon v. Chestnutt, No. 1:26-cv-1841-DC-AC, 2026 WL 878616, at *6 (E.D. Cal. Mar. 31, 2026) (finding that the petitioner "demonstrated a likelihood of success on the merits of his claim that his detention without process violated his property interest in the deferred action he is entitled to by his Bona Fide Determination"); see also Juarez v. Noem, No. 2:26-cv-0801-DC-CKD, 2026 WL 799976, at *7 (E.D. Cal. Mar. 23, 2026) (finding that "Petitioner was removed in flagrant violation of the regulatory protections afforded to her under DACA, and in violation of the Constitutional protections afforded to her under the Due Process Clause of the Fifth Amendment to the U.S. Constitution[.]").

These liberty and property interests were created at the time that the government granted Petitioner deferred action status.[7] See Reyes Servin v. Semaia, No. 5:26-cv-2745-MAR, 2026

_____

[7] The revocation of Petitioner's deferred action status on June 22, 2026 does not change the court's analysis of Petitioner's protected liberty interest. First, the revocation was done after ICE detained Petitioner on May 5, 2026, when he had deferred action status. See Oregon Nat. Desert Ass'n v. Bureau of Land Mgmt., 625 F.3d 1092, 1120 (9th Cir. 2010) ("courts may not accept ... post hoc rationalizations for agency action"). In light of this sequence of events, it appears to the Court that government officials revoked Petitioner's deferred action status without following

WL 1670852, at *3 (C.D. Cal. June 4, 2026) ("[O]nce Petitioner was granted deferred action, and permitted to remain free from detention, he acquired a liberty interest in remaining released from custody."). Respondents only argue that Petitioner should be considered an "applicant for admission" and do not argue that the revocation of Petitioner's deferred action status on June 22, 2026 extinguished his liberty and property interests. For all these reasons, the undersigned concludes that Petitioner has a protected liberty and property interest under the Due Process Clause in his deferred action status and its attendant employment authorization which allowed him to form enduring attachments of normal life in this country.

### 2. Mathews Factors

Having found that Petitioner has a protected liberty and property interest, the only question remaining is what procedures are necessary to protect those interests. In resolving this question, the Court utilizes the test announced in Mathews v. Eldridge, 424 U.S. 319 (1976).

#### a. Private Interest

The first factor unquestionably tilts in petitioner's favor because he has a clear interest in remaining free from detention. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause. Foucha v. Louisiana, 504 U.S. 71, 80 (1992). Petitioner has a private interest in his ongoing liberty while in deferred action that developed between October 4, 2024 and his detention in May 2026. See Noori v. LaRose, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

#### b. Risk of Erroneous Deprivation

The second Mathews factor is "the risk of an erroneous deprivation of [petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. This factor firmly favors Petitioner for several reasons. "In the absence of any meaningful initial procedural safeguards, it appears to us

---

USCIS procedure. Although revocation of deferred action status is discretionary, USCIS did not provide Petitioner any prior notice of its intent to revoke his deferred action status as is required by 8 C.F.R. § 214.14(h)(i). Put simply, USCIS ignored its own regulations.

that almost *any* additional procedural safeguards at some point in the detention would add value." Black, 103 F.4th 133, 153 (2d Cir. 2024) (emphasis in original).  Prior to giving Petitioner permission to live and work in the United States through deferred action, Respondents determined that he presented neither a danger to the community nor a risk of flight after it was provided with documents concerning Petitioner's arrests.  In this case, the risk of an erroneous deprivation is high given that Respondents provided no pre-deprivation process to Petitioner to determine whether his deferred action should be revoked.  See ICWC, 2026 WL 1455004 at *41 (finding all three Mathews factors favored the noncitizen Plaintiffs in their Fifth Amendment procedural due process challenge).  Accordingly, the second Mathews factor also weighs in favor of Petitioner.

### c.  Government Interest

Finally, the government's interest is low, and the effort and cost required to provide petitioner with procedural safeguards are minimal.  See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  Where removal is not imminent under a final order of removal, as in this case, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  Hernandez, 872 F.3d at 994; see also R.D.T.M., 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).  For all these reasons, the undersigned finds that petitioner is entitled to relief under the Mathews factors based on his detention without prior notice and a hearing.  Accordingly, petitioner's § 2241 application should be granted based on the procedural due process claim raised in claim two.

In order to tailor the remedy to the violation, the undersigned recommends not only requiring Petitioner's immediate release from ICE custody, but also restoring his deferred action status and its attendant employment authorization.  See Schlup v. Delo, 513 U.S. 298, 319 (1995) (emphasizing that "habeas corpus is, at its core, an equitable remedy.").[8]

---

[8]  Petitioner also invokes general federal question jurisdiction, further expanding the Court's ability to fashion an appropriate remedy beyond simple release.  See Roman v. Wolf, 977 F.3d

10

**C.  Petitioner is Entitled to Relief Under the <u>Accardi</u> Doctrine**

Petitioner also asserts a claim under the <u>Accardi</u> Doctrine.  Respondents do not raise any substantive argument to counter this claim.  <u>See</u> ECF No. 6.  As described in <u>ICWC</u>, the actions by ICE (and USCIS) under the new policy concerning beneficiaries of victim-based immigration applications deviate from decades of previous agency practice.  <u>See</u> ICWC, 2026 WL 1455004, at *5-6.  As Petitioner points out, "for nearly two decades, DHS policies have generally required ICE to refrain from pursuing removal efforts against people with pending U visa petitions, like petitioner, absent serious public safety concerns."  ECF No. 1 at 13 (citations omitted).  USCIS has the exclusive authority to adjudicate U-visa petitions and to grant deferred action status on the basis of such valid nonimmigrant petitions pursuant to 8 C.F.R. § 214.14(c).  <u>See also</u> 8 C.F.R. § 214.14(d)(3) (stating that "a petitioner may be removed from the [U visa] waiting list and the deferred action or parole may be terminated at the discretion of USCIS.").  ICE's unilateral and de facto usurpation of that authority on May 5, 2026, when it arrested and detained Petitioner, violated the <u>Accardi</u> Doctrine.  Therefore, claim four should be granted.[9]  The undersigned recommends the same remedy for this violation as recommended for the due process violation.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted on claims two and four based on the violation of his Fifth Amendment right to procedural due process and violation of applicable regulations and procedures.

2.  Respondents be ordered to immediately release Petitioner Antonio Vargas Cervantes (A205-380-366) from their custody.

3.  Respondents be ordered to restore Petitioner's deferred action status, subject to the

---

935, 941 (9th Cir. 2020) ("Courts have long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation. … Here, Plaintiffs' due process claims arise under the Constitution, and Plaintiffs invoked 28 U.S.C. § 1331, which provides subject matter jurisdiction irrespective of the accompanying habeas petition.") (citations omitted).

[9]  Having found that Petitioner is entitled to relief on two separate and independent claims, the Court finds it unnecessary to address the substantive due process challenge presented in claim three in the interests of judicial economy.

11

prior terms and conditions of his U-visa determination, including the restoration of his temporary work authorization, and to maintain that status unless Respondents first provide Plaintiff constitutionally adequate notice and an opportunity to be heard and follow the provisions of 8 C.F.R. § 214.14 governing the revocation of approved petitions for U Nonimmigrant Visa Status.

4.  At the time of release, Respondents be required to return all of Petitioner's documents and possessions.

5.  The Clerk be directed to serve the Golden State Annex with any order for release.

6.  Any final order entered in this case not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

7.  The Clerk of Court be directed to enter judgment for Petitioner and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 1, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

12